**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANDRE PACHECO,**

                                                    **Plaintiff,**

    **vs.**                                                                                      **09-CV-1419**
                                                                                                        **(MAD/RFT)**

**M. ZURLO; G. STANLEY; A. BOUCAUD; and**
**NEW YOUR STATE DEPARTMENT OF**
**CORRECTIONAL SERVICES,**

                                                    **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

Andre Pacheco
03-A-4973
Greene Correctional Facility
P.O. Box 975
Coxsachie, New York 12051
*Plaintiff Pro Se*

ERIC T. SCHNEIDERMAN                    Aaron M. Baldwin, Esq.
Attorney General of the State of New York     Asst. Attorney General
The Capitol
Albany, New York 12224-0341
*Attorney for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

    In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants

interfered with his legal mail in violation of his First Amendment rights while plaintiff was

incarcerated at Altona Correctional Facility.[1]  Defendants move for summary judgment and

_____

    [1] By previous Order, the Court dismissed plaintiff's Sixth Amendment claims relating to access to the courts.
(Dkt. No. 17).

dismissal of plaintiff's amended complaint pursuant to Fed. R. Civ. P. 56. (Dkt. No. 63). Plaintiff

has opposed the motion and has moved for an Order appointing counsel (Dkt. No. 72).

## BACKGROUND

The facts in this case, unless otherwise noted, are undisputed.[2] Defendant John Zurlo

("Zurlo") is employed by the New York State Department of Corrections and Community

Supervision ("DOCCS") as the Acting Deputy Superintendent for Programs at Altona

Correctional Facility ("Altona"). Zurlo is responsible for approving advance requests for legal

mail when inmates lack spendable funds. Defendant Greg Stanley ("Stanley") is employed by

DOCCS as the Inmate Grievance Coordinator at Altona and is involved with investigating facts

relating to inmate grievances.   At the relevant time, plaintiff was an inmate at Altona.

The Altona Correctional Facility Inmate Handbook provides, in pertinent part:

> Correspondence may be placed in the mailbox that is located in the
> dorm Recreation Room behind the Officer's desk. It is picked up
> approximately 5:30 a.m. daily. It must have at least one stamp and a
> disbursement slip for extra postage may be added if you are in doubt.
> Stamps are sold in the Commissary and may be purchased if on
> restriction through a legal buy. Correspondence procedures are
> described in Directives 4421 and 4422.

On August 11, 2009, DOCCS enacted Directive 4421 governing privileged

correspondence within a facility. Privileged correspondence includes correspondence to any

---

[2] The facts set forth in this section are taken from: (1) the Amended Complaint; (2) the Answer; (3) Defendants' Statements of Material Facts; (4) the exhibits and evidence submitted by Defendants in support of their Motion for Summary Judgment; (5) plaintiff's deposition transcript; and (6) the exhibits and evidence submitted by Plaintiff in Opposition to Defendants' Motion for Summary Judgment.

In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1. Plaintiff failed to specifically admit or deny defendants' factual statements as required by Local Rule 7.1. *See Michalski v. Home Depot, Inc*., 225 F.3d 113, 115 (2d Cir. 2000) (non-movant did not respond to statement and therefore, factual assertions were uncontested). Therefore, to the extent that defendants' statements are supported by the record, the Court will deem defendants' facts admitted by plaintiff. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The facts, as discussed herein, are for the relevant time period as referenced in the amended complaint.

attorney, approved legal representative or legal services organization.  Section 721.3 provides, in pertinent part:

> Procedure
>
> (a)(2)  Outgoing privileged correspondence may be sealed by the inmate, and such correspondence shall not be opened, inspected, or read without express written authorization from the facility superintendent as specified in subdivision ( c ) of this section.

The mail procedures were explained to plaintiff when he arrived at Altona.  Plaintiff was aware of Directive 4421 and believed, based upon the Directive, that the Superintendent was the only person with the authority to open privileged mail.

## A.    Legal Mailings

On November 5, 2009, plaintiff presented a piece of legal mail to the dorm officer for mailing ("First Mailing").[3]  Plaintiff requested that the mail be sent Certified Return Receipt Requested and submitted a disbursement form with the mailing in compliance with DOCCS regulations.[4]  The First Mailing was addressed to the Clerk of the U.S. District Court of the Northern District of the State of New York. Plaintiff was not directed by court rule, court order, or statute to send the mail by certified mail.  On the disbursement form, plaintiff indicated, "asking for advance" because there was no money in his inmate account to cover the postage. Defendants claim that the First Mailing was sent by the mail room to the business office due to deficient funds.  Defendants contend that the First Mailing was then re-routed, unopened, to Zurlo.

---

[3] Plaintiff identified the dorm officer as "Ms. B."

[4] Plaintiff admitted that he received copies of the certified receipt and disbursement forms for the November 2009 mailing but did not produce these documents.

On November 14, 2009, plaintiff filed a grievance (ALT-3549-09) requesting an investigation regarding his November 5, 2009 correspondence. Plaintiff was aware of the DOCCS grievance process having previously filed and appealed grievances. On November 18, 2009, the grievance was received by the Inmate Grievance Program ("IGP") office.

On November 20, 2009, Stanley sent a memorandum to plaintiff, which plaintiff admits he received. In the memorandum, Stanley stated:

> Please be advised that your legal mail is currently being held by Acting DSP Zurlo since you do not have funds in your account and you submitted a disbursement to cover the special handling postage. Pursuant to directive 4421, there are special circumstance [sic] that would allow you to be advance [sic] postage for special handling. You will be meeting with Mr. Zurlo on Monday concerning this issue.

On November 23, 2009, plaintiff met with Stanley and Zurlo. Zurlo appeared at the meeting with the First Mailing and told plaintiff that it was not sent because plaintiff submitted an improper disbursement form. Plaintiff claims that he noticed that the envelope had been tampered with because it was stapled and not in its original condition. Plaintiff contends that he asked Zurlo why the enveloped had been opened and Zurlo responded, "I have the power to see what you're sending out". Defendants claim that the envelope remained sealed at all times and that no documents were removed. During the meeting, plaintiff reviewed the contents of the envelope and claims that five documents were missing from the package.

At the conclusion of the meeting, Zurlo approved the special handling postage advance for plaintiff's First Mailing. Plaintiff then "signed off" on the grievance. Plaintiff did not appeal the grievance and considered the matter "resolved". Plaintiff claims that the meeting was no longer than "three minutes" in length. The First Mailing was sent out on November 24, 2009 and plaintiff received a return receipt card from the District Court, "a few days later".

On November 30, 2009, plaintiff filed a second grievance (ALT-3553-09), dated November 23, 2009, concerning the handling of his First Mailing alleging that documents had been removed from the First Mailing.   On December 9, 2009, the Inmate Grievance Resolution Committee ("IGRC"), through Stanley acting as Chairperson, issued a decision recommending that the grievance, "be accepted to the extent that the Acting DSP approved a postage advance for the grievant's legal mail and the legal mail was sent out.  Also, the grievant did receive his return receipt card on 12/1/09."  On December 9, 2009, plaintiff disagreed with the response and appealed to the Superintendent.

On December 14, 2009, Superintendent Boucaud issued a memorandum regarding the grievance finding:

> The grievance is accepted to the extent that the Acting DSP approved the postage advanced, which was signed by the grievant on 11/29/09. The legal mail in question was never opened by the Acting DSP, thus authorization from the Superintendent would not be needed.  The legal mail was sent out on 11/24/09 and the grievant's Return Receipt card was returned to him on 11/29/09.[5]

On December 17, 2009, plaintiff appealed the decision to the Central Office Review Committee ("C.O.R.C.")   On December 23, 2009, Stanley prepared a memorandum addressed to C.O.R.C. which provided, in pertinent part:

> Mr. Zurlo simply explained to inmate Pacheco why a regular disbursement form could not be used for the postage, and he had inmate Pacheco sign the Advance Request form.  Mr. Zurlo also advised inmate Pacheco that his mail would be delivered to the mailroom for processing.  At that point I asked inmate Pacheco if he understood and if he wanted to sign off on his grievance or pursue the issue.  Inmate Pacheco indicated that he did understand and would

---

[5] The memorandum is not in proper evidentiary form as there is no declaration from Bocaud but plaintiff does not object.

5

sign off on the grievance (ALT-3549-09) he filed about the legal mail being missing.[6]

On January 27, 2010, C.O.R.C. issued a decision upholding the Superintendent's determination finding:

> Contrary to the grievant's assertions, CORC has not been presented with sufficient evidence to substantiate any malfeasance by staff. CORC notes that the Acting DSP reviewed the grievant's request for special handling and it was approved on 11/23/09. CORC further notes that the delay in processing the advance was a result of the grievant submitting the wrong form to the wrong department.

> With respect to the grievant's appeal, CORC notes that staff did not open the privileged correspondence.

On January 3, 2010, prior to the resolution regarding grievance ALT-3553-09, plaintiff attempted to send another mailing ("Second Mailing") certified mail, return receipt requested with a disbursement form. The Second Mailing was also addressed to the Clerk of the District Court for the Northern District of New York.[7] Plaintiff does not claim that the Second Mailing was tampered with but alleges that Zurlo opened the mail. Defendants allege that the Second Mailing was re-routed to Zurlo because plaintiff did not have sufficient funds to cover the postage and disregarded the directives and used a disbursement form rather than an advance request form.

On January 5, 2010, plaintiff sent a letter to "Greg Stanley; I.G.R.C." complaining that the Second Mailing was missing. On January 8, 2010, plaintiff met with Zurlo and Stanley. Zurlo said, "he would take care of it" and mailed the Second Mailing without any advance. Defendants

---

[6] While the grievance investigated was ALT-3553-09, this memorandum addressed ALT-3549-09.

[7] Plaintiff's Second Mailing included exhibits to the complaint in the within action. (Dkt. No. 5). The complaint is discussed *infra*. Plaintiff identified the exhibits during his deposition: (1) November 29, 2003 grievance; (2) decision on the grievance; (3) November 14, 2009 grievance that plaintiff "signed off" (4) ADA grievance; (5) November 20, 2009 memorandum to plaintiff from Stanley; (6) November 19, 2009 letter to Inspector General; (7) Response from IG's Office; (8) November 28, 2009 and December 15, 2009 letters to Supt. Boucaud; (9) November 30, 2009 complaint; and (10) Superintendent's decision. *See* Pl. Dep. at pp. 79-84.

contend that the Second Mailing was never opened or read and that no items were removed. During the January 8, 2010, plaintiff signed off on the second "grievance" because it was found. Plaintiff did not appeal any portion of the "grievance". Plaintiff did not file a grievance claiming that the Second Mailing was opened. The Second Mailing was sent out and filed in Federal Court on January 13, 2010. (Dkt. No. 5).

**B.    *Pacheco v. Zurlo et. al.*, 09-CV-1330 (Prior Action)**

On November 27, 2009, plaintiff filed a civil rights complaint with this Court alleging that defendant, Zurlo, violated his right to reasonable accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and interfered with his right of access to the courts.[8]  *See Pacheco v. Zurlo*, 09-CV-1330 (Dkt. No. 1) ("Prior Action").  Plaintiff asserted two causes of action: first, that defendant Zurlo should have transferred plaintiff to a "flat facility," but instead, "acted outside his legal authority by referring the approved reasonable accommodations request to the New York State Americans With Disabilities Act Coordinator." Second, plaintiff claims that defendants have prevented him from accessing the law library, thereby preventing him from doing the "necessary research and adequately respond[ing] to moving papers." *See Pacheco v. Zurlo*, 2011 WL 1103102, at *1 (N.D.N.Y. 2011).

On June 16, 2010, defendants filed a motion to dismiss plaintiff's complaint in his ADA/Access to Courts cause of action.  The Court converted the application to a summary judgment motion.  On March 23, 2011, Senior United States District Judge Thomas J. McAvoy issued a Decision and Order with respect to the First Action, *Pacheco v. Zurlo*, 2011 WL 1102769 (N.D.N.Y. 2011), accepting and adopting the Report and Recommendation of United States Magistrate Judge Andrew T. Baxter dated February 8, 2011 granting summary judgment in

---

[8] Plaintiff also named Lester Wright, Chief Medical Officer and New York State Department of Correctional Services as defendants in the action.

favor of defendants. *Pacheco v. Zurlo*, 2011 WL 1103102 (N.D.N.Y. 2011). In the decision, the Court reasoned:

> rather than recommending dismissal without prejudice solely for failure to exhaust, this court recommends granting defendants' motion for summary judgment because plaintiff has failed to raise a triable issue of fact with respect to the ADA claim, the access to courts claim, and any "implied" Eighth Amendment claim. Thus, the court will recommend dismissal of the complaint in its entirety.

The Court granted defendants' motion for summary judgment concluding that plaintiff failed to raise a triable issue of fact with respect to his ADA claims, his access to court claims or his "implied" Eighth Amendment claims. With respect to plaintiff's ADA claims, the Court held:

> Even assuming that he is a "qualified individual" with a disability, he does not allege that he was denied any program because he could not go to the second floor of the Program Building. In fact, the response to plaintiff's grievance accepted his complaint to the extent that he was not to be programmed on the second floor. The response also indicated that he could access notary service and the Law Library from the first floor. Plaintiff does not specify any specific program in which he could not participate because of his disability.
>
> Finally, as stated by the response to plaintiff's grievance, a "transfer" is not necessarily a "reasonable accommodation." Prison personnel could accommodate an individual in various ways without transferring him to another facility. In any event, even assuming that a transfer was appropriate under the ADA, plaintiff has not shown that there was another facility to which he could have been transferred that was more appropriate than Altona. Thus, his ADA claim may be dismissed.

The Court also found, construing plaintiff's claims liberally, that "plaintiff's claim can be interpreted as raising either a conditions of confinement claim or a medical care claim, or both. Regardless of how plaintiff's claim is interpreted, it does not rise to the level of a constitutional violation." The Court noted that the defendants were not personally involved in either the failure to transfer plaintiff or in the alleged denial of a wheelchair. The Court held:

> None of the facts alleged by plaintiff in this case rise to the level of a serious deprivation, and there is no evidence of deliberate indifference

by defendants. Plaintiff alleges that he cannot climb stairs which prevents him from attending certain programs offered by the prison. However, the inability to attend a program is not a serious deprivation for Eighth Amendment purposes.

Plaintiff complains that he should have been transferred to a "flat facility," and he argues that the doctor prescribed such a transfer. A review of plaintiff's request for reasonable accommodation shows that the doctor stated that "would benefit from a flat facility with no stairs." As a result, defendant Zurlo stated that plaintiff would not be programmed on the second floor of the Program Building. There is no indication that plaintiff had to climb stairs for any other reasons. The fact that the doctor stated that plaintiff "would benefit from" a transfer does not indicate that the failure to transfer plaintiff rose to the level of deliberate indifference. Finally, plaintiff never states where he could or should have been transferred to fulfill his alleged needs that would have been "flatter" than Altona. The CORC decision stated that "Altona CF is considered a flat facility."

With respect to plaintiff's alleged request for a wheelchair, the court notes that there is no request for a wheelchair in either of his Requests for Reasonable Accommodation. The only place in which plaintiff mentions a wheelchair is, briefly, in his first grievance. There he states that his condition is degenerative, and he would "eventually" need the use of a wheelchair. In the next breath, he states that "the specialist" has already recommended the use of a wheelchair, but he was "denied at the facility." There is absolutely no evidence in the record of either a "recommendation" that plaintiff have a wheelchair or a denial of a wheelchair. Thus, plaintiff's fleeting comment to "eventually" needing a wheelchair does not rise to the level of a serious medical need, nor is there any indication that defendant Zurlo knew about, or was deliberately indifferent to, plaintiff's purported serious medical need for a wheelchair. Thus, plaintiff's Eighth Amendment claims may be dismissed in their entirety.

C.    *Pacheco v. Zurlo, et. al*, 09-CV-1419 (Pending Action)

On December 21, 2009, plaintiff filed his initial complaint in the within action alleging that his First Amendment rights were violated when defendants tampered with his legal mail. On February 3, 2010, plaintiff filed an amended complaint in this action. Plaintiff claimed, *inter alia*, that defendants, "knowingly and with malice of forethought intercept, open, read, copy and remove documents from plaintiff's outgoing legal mail. Documents plaintiff is unable to replace.

These defendants did so with the knowledge and intend to prevent plaintiff from seeking redress of their actions of other constitutional violations and deprivations."

**DISCUSSION**

**I.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A.      Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 ( c ).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e).  It is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56 ( c ) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)) (other citations omitted).  Where a

plaintiff has failed to properly respond to a defendant's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F.Supp.2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    Exhaustion Requirement**

The PLRA, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). This "requirement

'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" and regardless of the subject matter of the claim. *See id.* (citation omitted). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See id.* The failure to exhaust is an affirmative defense that defendants must raise and thus, it the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Giano*, 380 F.3d at 675 (citation omitted); *see also Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir.2004) (citation omitted).

"The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC . . . within four working days of receipt of the superintendent's written response." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

The Second Circuit has, "fashioned a three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA". *Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citation omitted). The Court must ask whether: (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) special circumstances justify the prisoner's failure to comply with administrative procedural requirements. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir.2004).

Letters sent directly to DOCS officials are not, on their own, sufficient to meet the § 1997e(a) exhaustion requirement. *Boddie v. Bradley*, 228 F. App'x 5, 7 (2d Cir. 2006); *see also Gillard v. Burge*, 2007 WL 1074789, at *5 (N.D.N.Y. 2007) ( "[l]etters of complaint, regardless

of the addressee, are not part of the grievance process and do not satisfy the exhaustion requirement") (citing, *inter alia, Nelson v. Rodas*, 2002 WL 31075804, at *3 (S.D.N.Y. 2002) ("[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements")).

Here, defendants claim that plaintiff failed to exhaust his administrative remedies with regard to the Second Mailing. Specifically, defendants claim that plaintiff's January 5, 2010 letter to Stanley complaining that his January 2010 legal mail was missing is not a "grievance" and further, that plaintiff did not appeal the alleged grievance through the highest levels of review. In support of the motion, Stanley provided an affidavit stating during the January 8, 2010 meeting with plaintiff, he advised plaintiff that if plaintiff wished to pursue the issue of his January 5, 2010 mail, "he would have to pursue administrative remedies by filing a separate grievance (as he had done for the November mail issue) and plaintiff indicated that he understood". Stanley further attested that he reviewed the facility grievance records and the list of appeals to CORC made by plaintiff and found that, "plaintiff never filed a grievance regarding the January 2010 mail issue and did not appeal to CORC regarding this claim".

In opposition to the motion, plaintiff failed to present any evidence that he misunderstood the available grievance procedures. Indeed, plaintiff was aware of the prison grievance procedure having filed grievances in the past, including two grievances related to his First Mailing. Plaintiff did not explaine why he did not follow the grievance process for the Second Mailing as he did for the First Mailing and prior grievances. Moreover, plaintiff admitted that he "signed off" on the January 2010 letter to Stanley with respect to the Second Mailing after his January 8, 2010 meeting with defendants.

Plaintiff has not alleged that administrative remedies were not available nor has he claimed that any "special circumstances" exist to justify his failure to comply with regulations. Upon a review of the record herein, the Court holds that plaintiff's January 5, 2010 letter to Stanley does not conform with DOCCS requirements regarding grievances. *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (the affidavits of the grievance coordinator established that the plaintiff did not file any proper administrative grievances relevant to the claims raised in his complaint). Accordingly, the Court finds that plaintiff failed to exhaust his administrative remedies with respect to the Second Mailing. While dismissal of this cause of action could be awarded without prejudice to allow plaintiff to file an amended complaint, the Court finds that despite plaintiff's failure to exhaust, the claim related to the Second Mailing does not raise any triable issue of fact and is subject to summary judgment.

**C.    First Amendment Claims**

Defendants contend that plaintiff cannot establish a cause of action for mail interference with regard to either the First or Second Mailing because the evidence does not demonstrate a regular or unjustified pattern of interference with plaintiff's legal mail that resulted in actual harm.

Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003). First Amendment mail claims are often intertwined with claims of denial of access to Courts, however the allegations exist separately. *Moore v. Gardner*, 199 F.Supp.2d 17, 33 (W.D.N.Y. 2002). The First Amendment protects a prisoner's right to the free flow of incoming and outgoing mail. *Davis*, 320 F.3d at 351 (citing *Heimerle v. Atty. Gen.*, 753 F.2d 10, 12–13 (2d Cir. 1985)). Restrictions on prisoners' mail

14

are justified only if they "further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id*. (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (internal citations and quotation marks omitted)). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded [. . . ] greater protection to outgoing mail than to incoming mail." *Id*. (quoting, *inter alia, Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). "Outgoing mail, whether legal or personal is entitled to greater protection from review or censorship because of the lesser security concerns presented." *Robinson v. New York State Dep't of Corr. Servs*., 2009 WL 3246818, at *11, n. 16 (N.D.N.Y. 2009) (internal citation omitted) (citing *Thornburgh*, 490 U.S. at 413).

To establish a First Amendment violation, "the plaintiff must show that prison officials regularly and unjustifiably interfered with the [] legal mail." *Davis*, 320 F.3d at 351 (citation omitted). The Second Circuit has held that "as few as two incidents of mail tampering could constitute an actionable violation: (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id.* (citation omitted).

While a prisoner has a right to be present when his or her legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. *Walton v. Breeyear,* 2007 WL 446010, at *13 -15 (N.D.N.Y. 2007) (internal citation omitted) (citing *Davis,* 320 F.3d at 351 (citations omitted). Where the incidents of tampering are few and the "actionable violation is not obvious on it's face", the Circuit "generally require[s] specific allegations of

invidious intent or of actual harm. *Davis* 320 F.3d at 351–52 (citations omitted). Plaintiff must allege facts which show that defendants acted with an invidious intent and that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Id.* (citation and internal quotations omitted); *Hudson v. Greiner*, 2000 WL 1838324, at *5 (S.D.N.Y. 2000). Allegations that defendants twice opened legal mail, "is insufficient [to] suggest an ongoing practice of unwarranted censorship, or tampering that unjustifiably chilled his right of access to the courts or impaired legal representation he received". *Gardner v. Rivera*, (535 F.Supp.2d 430, 432 (S.D.N.Y. 2008); *see also Lewis v. Johnson*, 2010 WL 3785771, at *13-14 (N.D.N.Y. 2010) (the plaintiff acknowledged that only two pieces of legal mail were opened outside his presence).

Plaintiff must also allege that the opening of mail outside his presence caused him to suffer damage. *Hudson*, 2000 WL 1838324, at *5 (citation omitted) (allegation that mail was read on three occasion outside of inmate's presence, without more, was insufficient to state a claim). Claims relating to the opening and possible destruction of legal mail, without any showing of how plaintiff was prejudiced in a legal proceeding, does not support a viable First Amendment claim. *Lewis,* 2010 WL 3785771, at *13-14. Actual injury exists where interference with legal mail results in "the dismissal of an otherwise meritorious legal claim." *Sheppard v. Lee,* 2011 WL 5314450, at *3 (N.D.N.Y. 2011) (*Davis*, 320 F.3d at 351 (internal quotation marks and citations omitted)).

Here, plaintiff alleges that defendants opened and tampered with the First Mailing and also claims that defendants opened his Second Mailing. Plaintiff does not raise any tampering claims with respect to the Second Mailing. Defendants claim that plaintiff's legal mail was never opened, read or copied and that no items were ever removed from either mailing. According to plaintiff, defendants opened his legal mail, outside of his presence, on only two occasions.

Without evidence of invidious intent or actual harm, defendants alleged conduct does not rise to the level of a constitutional violation.

Not only has plaintiff failed to allege a regular pattern of interference, plaintiff's amended complaint contains no claim or allegation that he suffered any actual injury as a result of defendants' actions. Essentially, plaintiff alleges that nothing more than defendants "removed" documents that he cannot replace. Plaintiff does not claim that the removal caused dismissal or summary judgment or otherwise impacted any legal action. *Ford v. Phillips*, 2007 WL 946703, at *13 (S.D.N.Y. 2007) (the plaintiff did not allege that he missed any deadlines or faced any other, specific legal injuries as a result of the alleged interference). "[T]he mere suggestion, without any supporting argument or evidence, that [the plaintiff] would have succeeded [in a legal action] does not state that [the plaintiff] lost an otherwise meritorious claim." *Id.*

Plaintiff claims that defendants' opened and removed five medical documents from the First Mailing. In April 2011, during plaintiff's examination before trial, he identified those five documents as: (1) EMG/Nerve Conduction Studies dated March 2009; (2) EMG/Nerve Conduction Studies dated July 2009; (3) a NYSDOC Consultation Report dated May 2009; (4) a M-11 Q Form dated November 16, 2011 for admission to a City of New York HIV/AIDS program; and (5) a report by a physicians' assistant dated May 22, 2001 from Bronx Lebanon Hospital. Plaintiff did not attach these documents in his initial complaint or in the amended complaint asserting that he is "unable to replace" these documents. However, plaintiff's April 2011 deposition testimony belies his claim. During the examination before trial, plaintiff testified:

> Q.   Did you, in response to discovery requests made by me and the Court's order in this case, give me copies of the five documents that you claimed were removed from your November 5 mailing?

      A.      Uh, I thing I did.  I think I did.

      Q.      All right.

      A.      I think I did.

      Q.      And if you had sent out your only copies, where did you get them?  Did you get them from me in discovery or from some other source?  Did you go back to the Medical Records Office?

      A.      I went to Medical Records Office requesting copies of those certain documents.

During the deposition, the five medical documents were produced and identified by plaintiff.  Plaintiff was asked the following question and gave the following response:

      Q.      And now you've identified all of the pages that were allegedly removed from your mail?

      A.      Yes, sir.

Pl. Dep. at pp. 31-43.

Even if this Court views the amended complaint in a light most favorable to the *pro se* plaintiff and infers that plaintiff intended to allege that he suffered actual injury by the removal of the documents, to wit, the dismissal of his First Action, plaintiff's claims are still susceptible to summary judgment.  Defendants addressed this issue and argue that plaintiff's prior § 1983 action (09-CV-1330) was dismissed on the grounds that plaintiff failed to exhaust administrative remedies prior to bringing suit and further, because plaintiff failed to raise any constitutional issues.  Defendants contend that plaintiff suffered no actual injury or damage as a result of the alleged mishandling or tampering of his First Mailing.  The Court agrees.

In the Prior Action, defendants motion to dismiss, (Dkt. No. 24), was converted by the Court to a motion for summary judgment.  (Dkt. No. 26).  On November 4, 2010, plaintiff filed an Affidavit in Opposition to defendants' motion.  Nowhere in that opposition did plaintiff

mention or reference the five documents that were allegedly removed from the First Mailing, nor does he allege that the documents had any bearing on his ADA or Eighth Amendment claims.

On February 8, 2011, Magistrate Judge Baxter issued a decision recommending that defendants' motion for summary judgment be granted for a variety of reasons. On February 24, 2011, plaintiff filed an objection to the Report-Recommendation. Nowhere in the objection does plaintiff mention, refer or cite to any of the documents that were allegedly removed. (Dkt. No. 37). On March 23, 2011, the Report-Recommendation was adopted in its entirety.

In this action, the medical records that plaintiff claims were removed from the First Mailing are annexed to Defendants' Motion as Exhibit "I". The May 2009 DOCS neurological consultative report is the only record that is arguably pertinent to plaintiff's Prior Action. In that report, the specialist noted that, "use of a wheelchair is necessary for patient to move around - cannot use stairs". Even if this record was reviewed and considered by the Court in connection with the Prior Action and defendants' summary judgment motion, the decision to award summary judgment would remain unchanged. Magistrate Judge Baxter conducted an exhaustive review of the record and construed the complaint in a light most favorable to plaintiff. The Court found that dismissal was warranted because plaintiff failed to exhaust his administrative remedies. Further, the Court found, "notwithstanding his failure to exhaust, plaintiff has failed to raise any issues of fact regarding either constitutional or ADA claims". With respect to the ADA, the Court dismissed those claims as the evidence did not establish that plaintiff was precluded from participating in any program due to his disability and further, the evidence did not show that there was another facility that could/would accommodate plaintiff. Finally, with regard to plaintiff's "implied" Eighth Amendment claim, the Court specifically held that the need for a wheelchair is not a "serious medical need" and further, that even if it was, plaintiff could not prove that

19

defendant Zurlo was deliberately indifferent to plaintiff's need for a wheelchair. Thus, plaintiff's claims were dismissed and defendants were granted summary judgment on various grounds. Based upon the aforementioned, the exclusion of the allegedly removed medical documentation did not result in the dismissal of an otherwise "meritorious" action.

Plaintiff's allegations with respect to the Second Mailing are equally unavailing. Plaintiff has not alleged he suffered any actual injury as a result of Zurlo opening the Second Mailing. "[I]n the absence of any facts to demonstrate that [ ] he was [] prejudiced by the opening of a [], plaintiff's claims must fail as a matter of law." *Chavis v. vonHagn*, 2009 WL 236060, at *70 (W.D.N.Y. 2009). While plaintiff may have been upset that his mail was opened, he has not demonstrated or even alleged how the opening of his mail and/or the alleged removal of five documents interfered with his pending § 1983 action. *See Lewis*, 2010 WL 3785771, at *13-14 (the plaintiff's conclusory and general allegations of mail tampering were insufficient to overcome the defendants' motion for summary judgment).

Upon review of the record, the Court finds that plaintiff failed to demonstrate a "regular and unjustifiable" pattern of interfering with his outgoing legal mail that resulted in any actual injury including the dismissal of an otherwise meritorious action. In opposition to defendants' motion, plaintiff offers no proof that his mail was opened or read. *See Midalgo v. Bass*, 2006 WL 2795332, at *13 (N.D.N.Y. 2006). Accordingly, the Court grants defendants motion for summary judgment and dismissal of plaintiff's First Amendment claims.

**D.      Retaliation Claims**

In response to defendants' summary judgment motion, plaintiff claims that defendants withheld his mail, "in retaliation of a previous action against them for not approving a transfer to a flat facility after a professional physician has ordered such to be done cause [sic] of actual

disease of plaintiff".   Even viewed in a light most favorable to plaintiff and taking into consideration his *pro se* status, the amended complaint is devoid of any retaliation claims. Plaintiff has raised these allegations, for the first time, in opposition to the within motion.  "It is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion".  *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (the pro se plaintiff in a § 1983 civil rights action, improperly raised conclusory retaliation claims for the first time in opposition to a motion for summary judgment).  For this reason alone, plaintiff's retaliation are subject to dismissal.  However, even assuming plaintiff's retaliation claims were properly asserted, they are meritless.

"In order to prevail on his retaliation claims, [the plaintiff] bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir.1997)).  "But because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, [the Court is] careful to require non-conclusory allegations."  *Bennett,* 343 F.3d at 137 (internal quotations and citations omitted).

Viewing the evidence in a light most favorable to plaintiff, the Court finds no support in the record for plaintiff's retaliation claims.  Plaintiff failed to establish that defendants interfered or tampered with his outgoing legal mail in violation of his First Amendment rights.  Thus, plaintiff's newly asserted retaliation claims lack merit.

**E.      Personal Involvement, Qualified Immunity, Eleventh Amendment and Mootness**

As discussed above, plaintiff suffered from no constitutional violation.  In light of this Court's finding that defendants are entitled to summary judgment dismissing plaintiff's First Amendment claims and retaliation claims, on the constitutional merits, the Court declines to address defendants' alternative arguments regarding personal involvement, qualified immunity, mootness or the Eleventh Amendment.  *See Cowart v. McGinnis*, 2007 WL 4030000, at *9 (W.D.N.Y. 2007).

## II.    PLAINTIFF'S MOTION TO APPOINT COUNSEL

For the foregoing reasons, plaintiff's motion to appoint counsel is denied as moot.

## CONCLUSION

**It is therefore**,

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's complaint in its entirety (Dkt. No. 63) is **GRANTED**, it is further

**ORDERED**, that plaintiff's motion to appoint counsel (Dkt. No. 72) is **DENIED** as moot, it is further

**ORDERED** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: January 4, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge